UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LNV CORPORATION,

    Plaintiff,

v.

SAVANNAH DEVELOPMENT, LLC, ET AL.,

    Defendants.
                                /

Case No. 12-13562

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART LNV CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT [76] FILED ON JULY 7, 2014**

Currently before the Court is Plaintiff LNV Corporation's motion for partial summary judgment, essentially seeking a ruling on liability. For the reasons set forth below, the Court GRANTS Plaintiff's motion in part.

**I.   FACTS**

Plaintiff, LNV Corporation ("LNV"), holds the note on a mortgage that was granted to Defendant Savannah Development, LLC ("Savannah") on a property purchased as a real estate investment. Additionally, the individual members of Savannah signed on as guarantors to the mortgage. There are sixteen individually named Defendants in addition to Savannah[1], and one of them, Robert Gaines, raises a defense regarding substitution that is unique to him.

---

[1] The individually named Defendants in addition to Savannah are: DFC Properties, LLC, Laurex, PLLC, PK Holdings, LLC, KFA Enterprises, David Cannon, Tom Liberati, Frank Tuczak, Todd W. Smith, Mark R. Partagonian, John R. Kolb III, Kevin L. Akey, Frank S. Zychowski, Craig R. Bender, Thomas V. Fockler, Mark Leonard d/b/a Mark Leonard Building Co, and Robert Gaines.

The basic chronology of events leading up to this lawsuit are as follows: Savannah and Sterling bank, LNV's predecessor in interest, entered into a loan and mortgage agreement in the amount of $825,000 on December 10, 2004.[2] Sixteen guarantors signed onto the loan, comprised of both individuals and various business entities. On October 12, 2005, Sterling Bank assigned the loan to Franklin Bank, another predecessor in interest to LNV. On November 7, 2008, Franklin Bank was placed in receivership under the FDIC. LNV purchased the loan from the FDIC on June 4, 2009. In January and March of 2012, LNV sent letters to the members of Savannah - who are also the guarantors - for the purpose of notifying them that the loan was in default and to demand payment. Savannah and the guarantors were unable to satisfy LNV's demands for payment and, on July 11, 2012 LNV foreclosed on the property. As discussed below, there is no genuine dispute as to the above sequence of events.

LNV subsequently repurchased the property at a Sheriff's Sale for a credit bid of $495,000. The outstanding balance on the loan at the time of LNV's purchase was $759,301.66. As such, LNV's bid left a deficiency balance of $264,301.66. The amount of LNV's credit bid was based, at least in part, on an appraisal of the property, carried out by Colliers International in April 2012 at LNV's request. That appraisal determined the value of the property to be $740,000 "upon stabilization," $530,000 "as-is," and $380,000 "as-is bulk." Defendants commissioned their own appraisal in July 2012, which valued the property at $725,000, with some qualifications. These competing appraisals provide the

---

[2] The Parties occasionally refer to "Loan One" and "Loan Two" throughout their pleadings. Loan One is the mortgage at issue in this case. Loan Two relates to a separate loan transaction entered between Sterling Bank and Savannah on August 25, 2005. LNV does not assert any claims regarding Loan Two.

grist for the main dispute between the parties at this stage in the litigation.

As to the issues unique to Gaines, he claims that in January 2007 he sold his interest in Savannah and was replaced as a guarantor on the loan by Patrick Burns and William Dolan. While it appears as though Gaines executed an "agreement of sale of member interest" with Dolan and Burns, there is nothing beyond his own testimony and the declaration of Todd Smith–another guarantor–to suggest that they further agreed to act as guarantors. Indeed, Smith's declaration is silent on this point, maintaining only that Burns and Dolan "informed [him] that they would take all actions necessary . . . to ensure that they were substituted as guarantors and Gaines was released as a guarantor under the Loan." (Gaines' Resp. Ex. 5 at ¶ 11.) Notably missing from Smith's declaration is a representation that Burns and Dolan actually did "take all actions necessary" to release Gaines from his obligations. Moreover, Gaines has since stipulated to the dismissal of Burns and Dolan from this lawsuit.

Gaines further claims that, upon receiving the notice of default from LNV, he contacted Sterling Bank to inquire why he was being notified of the default in light of his understanding that he was no longer a guarantor on the loan. Sterling Bank's response to Gaines' inquiry only adds to the confusion. In an email dated October 21, 2009, a representative of the Bank indicated that Gaines was "no longer considered by the Bank as a guarantor." (Gaines' Resp. Ex. 1.) Just five days later, however, the Bank maintained that the loan was "sold to LNV Corp who took back servicing as of October 15, 2009. We have no say as to who will or will not be released from this loan."[3] (Gaines Resp. Ex. 12.)

---

[3] Although Sterling Bank sold its interest in the loan, it continued to service the loan until October 15, 2009 at which point it was replaced by CLMG Corp.

Finally, in March of the following year, the new loan servicer, CLMG Corp., indicated that it was "unable to locate any approval by Franklin Bank allowing (i) the sale of Robert Gaines' interest . . . (ii) the additions of Patrick Burns and William Dolan as guarantors, or (iii) the release of Robert Gaines as a guarantor." *Id.* As mentioned, Gaines has been unable to produce any documentation refuting CLMG's claim.

Notwithstanding Gaines' side agreement with Burns and Dolan, Savannah and its members executed a "guaranty of loan" agreement with Sterling Bank. Significantly, the agreement prohibits the release of any guarantor before the loan is paid in full:

> It is fully understood that until each and every one of the covenants and agreements of this Guaranty are fully performed, the undersigned's obligations shall not be released, in whole or in part, by any action or thing which might, but for this provision of this instrument, be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly otherwise, or by reason of any action taken or omitted by lender, whether or not such action or failure to act varies or increases the risk of or affects the rights or remedies of the undersigned, or by reason of any further dealings between Borrower, Lender or any other guarantor, and the undersigned hereby expressly waives and surrenders any defense to its liability hereunder based upon any of the foregoing acts, omissions, things, agreements or waivers of any of them; it being the purpose and intent of the parties hereto that the covenants, agreements and all obligations hereunder are absolute, unconditional and irrevocable under any and all circumstances except as provided hereinafter.

(Plf's Mot. Ex. 1D, Guaranty Agrmt. at 3.)

The "except as provided hereinafter" language above refers to the following section of the guaranty:

> Provided that no default or Event of Default (as that term defined in the Mortgage heretofore mentioned) then exists under any Loan Document, this Guaranty shall terminate when Lender shall have been paid in full, including interest thereon, for all Liabilities. When such conditions have been met, lender will furnish written cancellation of this Guaranty.

4

*Id.* In other words, the agreement is clear that Savannah and its individual members–i.e. Gaines–are not released from their obligations until the loan is paid in full. Gaines does not deny that he voluntarily entered into the guaranty.

Plaintiff timely filed this motion for partial summary judgment seeking to establish liability in connection with Count 1 (breach of contract) and Count 2 (breach of a promissory note) of the Complaint. Regardless of the Court's disposition, Plaintiff acknowledges that Defendants' affirmative defense under Mich. Comp. Laws. § 600.3280 creates an issue of material fact with respect to damages. (Plf's Mot. at 2.)

## II. ANALYSIS

### A. The Standard on Motion for Summary Judgment

The Sixth Circuit employs the familiar standard for summary judgment, namely, that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Moreover, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing and quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### B. Plaintiff's Motion for Partial Summary Judgment is Procedurally Sound

As an initial matter, one of the Defendants, Mark Leonard, argues that "LNV appears to be seeking some sort of 'half judgment' not recognized by the Federal Rules of Civil Procedure, where they receive a judgment subject to potential proof of an affirmative defense." (Leonard Resp. 2.) In other words, Leonard suggests that the Federal Rules only permit an all or none approach, precluding a party from obtaining a judgment as to liability only. The first sentence of Fed. R. Civ. P. 56 specifically states that: "[a] party may move for summary judgment, identifying each claim or defense - *or the part of each claim or defense*--on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). Moreover, the Advisory Committee Notes to Rule 56 make clear that "[t]he first sentence [of subdivision (a)] is added to make clear at the beginning that summary judgment may be requested . . . as to a claim, defense, or part of a claim or defense." Fed. R. Civ. P. 56(a) 2010 advisory committee's notes. The Court thus rejects Leonard's argument and proceeds to analyze Plaintiff's motion on the merits.

### C. Defendants' Arguments Regarding LNV's Interest in the Loan are Meritless

Another of the Defendants, Tom Liberati, challenges LNV's claim to be the legal noteholder of the debt securing the loan. In essence, Liberati argues that Plaintiff has failed to establish that the note was properly assigned to LNV. Even a cursory review of the record reveals that this argument is baseless. Indeed, in addition to the affidavit of Stewart Wilson, the records custodian for the loan servicer, and the deposition testimony of an employee of the original lender, Plaintiff produced the "assignment of mortgage" between the FDIC and LNV along with several other transactional documents evidencing LNV's interest in the loan. *See* (Plf's Mot. Exs. 1, 1F, & 4.) Liberati has failed to produce any evidence calling into question the authenticity of LNV's documents or the transfer of interest from Sterling, Franklin, or the FDIC. In sum, Liberati's naked assertions are insufficient to raise a question of material fact with respect to LNV's right to seek recovery of the outstanding debt.[4]

### D. Defendant Robert Gaines is Liable as a Guarantor

Defendant Robert Gaines maintains that he was released from his obligations as a guarantor by Sterling Bank and, as such, is no longer responsible for the underlying default on the loan. The crux of Gaines' argument is premised on two theories: First, he argues that LNV, as a principal, is liable for the actions of its agent, Sterling Bank, who represented that he was no longer considered a guarantor. In the alternative, Gaines contends that the doctrine of equitable estoppel precludes LNV from asserting that he is liable under the guaranty.

---

[4] Liberati also contests LNV's interest calculations. In light of the Court's conclusion that there exists a genuine issue of material fact with respect to damages in this case, it is unnecessary to assess the merits of this argument.

**1. The servicing agreement between LNV and Sterling Bank expressly precluded the release of a guarantor**

The existence and scope of an agency relationship is determined under Michigan law. "Under the common law of agency, in determining '[w]hether an agency has been created,' we consider 'the relations of the parties as they in fact exist under their agreements or acts' and note that in its broadest sense agency, 'includes every relation in which one person acts for or represents another by his authority.'" *St. Clair Intermediate Sch. Dist. v. Intermediate Educ. Ass'n/Michigan Educ. Ass'n*, 581 N.W.2d 707, 716 (Mich. 1998) (quoting *Saums v. Parfet*, 258 N.W. 235, 237-38 (Mich. 1935)). In Michigan, the "test of whether an agency has been created is whether the principal has the right to control the actions of the agent." *Meretta v. Peach*, 491 N.W.2d 278, 280 (Mich. Ct. App. 1992).

An agent's authority may be either actual or apparent. *Alar v. Mercy Mem'l Hosp.*, 529 N.W.2d 318, 323 (Mich. Ct. App. 1995). Actual authority may be either express or implied. *Id.* Implied authority is the authority that an agent believes he or she possesses. *Id.* Significantly, implied authority may arise from the conduct of the principal and circumstances over time, *but not* contrary to the express intentions of the principal. *Flat Hots Co., Inc. v. Peschke Packing Co.*, 3 N.W.2d 295, 297 (Mich. 1942).

Here, there can be no dispute that Sterling Bank–as the loan servicer–acted as LNV's agent during all times relevant to Gaines' claim that he was released from the guaranty. Indeed, their relationship was governed by the terms of a "servicing agreement" executed between Sterling Bank and Franklin Bank- the entity acquired by the FDIC. Notwithstanding an internal email from a Sterling Bank employee suggesting that "Mr. Gaines [was] no longer considered by the Bank as a guarantor", (Gaines' Resp. Ex. 1),

section 2(i)(v) of the servicing agreement expressly prohibited the Bank from "releas[ing] any party or parties now or hereafter liable for the payment of any Mortgage Loan or the performance of any other obligation relating thereto." (Plf's Mot. Ex. H, Servicing Agrmt. at 5.) In other words, even assuming, *arguendo*, that the Court did find that Sterling Bank's email constituted a valid release, it was expressly prohibited from authorizing such action on LNV's behalf. This is precisely the teaching of *Flat Hots Co.;* where the scope of the agency relationship is defined by an express agreement, there can be no argument that the agent had apparent authority to take action that is directly contradicted by the terms of the agreement. 3 N.W.2d at 297. Accordingly, Gaines' argument on this score must and does fail.

### 2. Gaines' equitable estoppel defense is barred by the express terms of the guaranty.

Under Michigan law, "the relationship between the parties to a guaranty agreement is contractual in nature and, thus, it is defined by the contract of guaranty." *Crown Life Ins. Co. v. Hicks*, 1994 U.S. Dist. LEXIS 5562, *10 (E.D. Mich. Jan. 7, 1994) (citing *First National Bank v. Redford Chevrolet Co.*, 258 N.W. 221 (Mich. 1935). Here, the guaranty provides, without limitation, that "until each and every one of the covenants . . . are fully performed, the undersigned's obligations shall not be released . . . by any action or thing which might . . . be deemed a legal or equitable discharge of a surety or guarantor . . . ." (Plf's Mot. Ex. 1D, Guaranty Agrmt. at 3.) On July 8, 2013, the Court granted Gaines' request to amend his answer to include equitable estoppel as an affirmative defense, adding the following important caveat: "Under most circumstances, [the language of the guaranty] would . . . obviously act to make Gaines' proposed amendment futile . . . .

9

However, in this instance Gaines's argument and supporting evidence that he was *replaced* as a guarantor creates enough of a question of law and fact as to warrant allowing the amendment." (Order, Dkt. No. 57.) (emphasis added).

Following a number of factual and procedural developments, the Court subsequently concluded that it would "not entertain Gaines' claims that a novation occurred." (Order, Dkt. No. 69.) Indeed, as noted above, there is nothing in the record to suggest that Burns and Dolan voluntarily agreed to assume Gaines' obligations under the guaranty. As such, Gaines has failed to adequately support the only plausible equitable defense that might have been available to him, namely: novation. In sum, "[a] guarantor's liability is primarily defined . . . by the guaranty, and in the guaranty a guarantor may waive defenses he otherwise would be entitled to waive. *Crown Life Ins. Co. v. Hicks*, 1994 U.S. Dist. LEXIS 5562, *11 (E.D. Mich. Jan. 7, 1994) (quoting *United States v. Stump Home Manufacturing Inc.m* 905 F.2d 1117, 1120 (7th Cir. 1990). It was Gaines' individual decision to forego the benefit of certain defenses he was entitled to. The Court will not now ignore the unambiguous language of a valid contract.

Nor has Gaines' persuaded the Court that the guaranty's preclusion of equitable defenses should be deemed unconscionable. As Plaintiff correctly points out, for a contract to be deemed unconscionable, it must pass a two part test. Specifically, "federal courts consistently observe that Michigan law requires a party to demonstrate both procedural and substantive unconscionability." *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 321 (6th Cir. 2013). Procedural unconscionability exists where "the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural

10

unconscionability." *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 475 (Mich. Ct. App. 2005).

Here, Defendants have failed to present any evidence that they had no realistic alternative to finance their real estate development. At its core, this lawsuit revolves around a contract between two sophisticated entities engaging in a voluntary transaction designed to maximize revenue for all involved. Even assuming Defendants were on the weaker side of the bargaining table, clearly they had other options; not the least of which was avoiding the highly volatile real estate investment market in the first place. Finally, even assuming the Court did find the clause to be legally infirm, Gaines has failed to produce a shred of evidence suggesting that Sterling Bank was, at a minimum, culpably negligent in suggesting that he was released from the guaranty- a critical element of equitable estoppel. *Mate v. Wolverine Mut. Ins. Co.*, 592 N.W.2d 379, 383 (Mich. Ct. App. 1998). Consequently, Gaines has failed to establish that the clause in question was unconscionable.[5] The Court thus grants Plaintiff's motion with respect to Gaines' liability under the guaranty.

### E. LNV has Established that Defendants are Contractually Liable for Breaching the Loan Agreement

While there are technically two contracts at issue in this matter–the loan agreement and the guaranty–there is no dispute that the two are interrelated; a finding that the loan agreement was breached triggers the potential for Defendants' personal liability under the guaranty.

---

[5] In light of the Court's conclusion concerning the agency relationship between Sterling Bank and LNV, any discussion of Plaintiff's alternative arguments–premised under the statute of frauds and the D'Oench Duhme Doctrine–would be superfluous.

As the Michigan Supreme Court recently reiterated, "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (Mich. 2014). Of particular relevance here, the *Miller-Davis* court noted that "causation of damages is an essential element of any breach of contract action." *Id.*

With the exception of Gaines and Liberati–who the Court previously addressed–Defendants do not dispute the first two elements of Plaintiff's contract claim. Indeed, there is overwhelming evidence that (1) LNV, as the successor in interest to the loan, mortgage, and guaranty agreement, acquired a valid contractual relationship with Defendants, (2) Savannah Development defaulted under the terms of the loan agreement, and (3) as a result, there is an outstanding balance on the original mortgage. The only remaining question, therefore, is the issue of damages.[6]

Defendants have validly pled an affirmative defense under Mich. Comp. Laws § 600.3280, which, if proven, allows for the reduction or elimination of the post-foreclosure deficiency balance to the extent that Defendants can prove that LNV's bid "was substantially less than [the property's] true value." Mich. Comp. Laws § 600.3280. Plaintiff acknowledges that "resolution of [this] issue may involve questions of fact, and LNV has not included it in this motion." (Plf's Mot. 3.) Nonetheless, Plaintiff maintains that it is entitled to a judgment in the amount of the deficiency balance now. The Court disagrees.

---

[6] Plaintiff also argues, in the alternative, that Defendants are liable for "breach of a promissory note." In light of the Court's holding with respect to the contract claim, it is unnecessary to assess the merits of this claim (Count II), which Plaintiff admits is simply an alternative basis for Defendants' liability.

*See Fed. Deposit Ins. Co. v. Torres*, 2014 WL 309787, *9 (Mich. Ct. App. Jan. 28, 2014). ("In sum, the circuit court did not err in granting summary disposition in favor of plaintiff on the limited issue of liability. From the evidence submitted, there was no genuine issue of fact that defendant defaulted under the terms of the second mortgage. Thus, the only question remaining was the amount of damages.")

Clearly, the success of Defendants' affirmative defense is inextricably linked to Plaintiff's right to recovery. If Defendants' are able to establish, by a preponderance of the evidence, that the true value of the property was "fairly worth the amount of the debt," then LNV will be hard pressed to demonstrate that it suffered any damages. On the flip side, if LNV's bid represented a fair valuation of the property, then Defendants will be liable for any remaining deficiency balance. Notwithstanding Plaintiff's admission that this inquiry raises questions of material fact, the Court finds that the competing appraisals submitted by the parties are sufficient to take the issue outside the purview of Federal Rule 56. As such, the Court denies Plaintiff's motion to the extent it seeks a determination of damages.

### III. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS IN PART LNV's motion for partial summary judgment with respect to Savannah Development's liability under the loan agreement in an amount to be proven at trial. The Court further GRANTS LNV's motion to dismiss Gaines' affirmative defense that he was released from his obligations under the guaranty.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 6, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 6, 2014, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager